ular fees, so as to create a lien or claim thereon in favor of any officer; but a mere authority is given to the collector to pay them out of the moneys of the United States, arising from the revenue, in his hands. If he does not pay the fees, the claim remains valid against the government, and the new collector is now at liberty to pay them, if they are properly chargeable. I give no opinion whatsoever upon the question, whether the claim of the plaintiff for fees is valid or not. That is not a point necessary for the present decision. Plaintiff nonsuited.

CHANA (UNITED STATES v.). See Case No. 14,780.

## Case No. 2,588.

CHANCE v. UNION MUT. LIFE INS. CO.

Circuit Court, E. D. Missouri. Sept., 1876.

[Cited in White v. Insurance Co., Case No. 17,545. Nowhere reported; opinion not now accessible.]

## Case No. 2,589.

The CHANCELLOR.

[4 Ben. 153.][1]

District Court, S. D. New York. May, 1870.

COLLISION AT SEA — SHIP AND FISHING VESSEL— VESSEL AT ANCHOR—FOG—SIGNALS—SPEED.

1. The schooner B., an American fishing vessel, while at anchor on the Grand Bank of Newfoundland, was run down in a dense fog by the ship C. and sunk, on the 22d of September, 1866. The ship was going at the rate of about six knots an hour, under full sail except studding sails, and a fog horn was being blown upon her, at intervals of about ten seconds. No horn was blown or bell rung on the schooner during the day of the collision, till after the horn of the ship was heard, when a horn was blown, and, on hearing a second blast from the ship's horn, the horn was again blown and then a bell was rung. On hearing the horn from the schooner, the ship's wheel was ordered to be put to port, and had been got about half over to port, when the bell was heard, and it was ordered to be put hard-a-starboard, but before it was got half way over to starboard the collision occurred: *Held*, that usually, in a suit in rem for collision, the first question is, whether the vessel sued was in fault, and not till that fact is established does the inquiry arise whether the libellant's vessel was in fault.

2. The schooner being at anchor was grossly in fault, in not sounding her bell, as required by article 10 of the regulations for preventing collisions, and in blowing a horn on hearing the horn from the ship.

[Cited in The Scotia, Case No. 12,513.]

3. In view of the sounds she heard from the schooner, the manoeuvres of the ship were the proper ones.

4. These violations of the law by the schooner being shown, the burden of proof was upon her to show that the collision was in no degree owing to them.

5. The requirement of article 10, of the regulations for preventing collisions, that a bell shall be sounded at least every five minutes,

whenever there is a fog, means, that, in any case, the bell must be sounded as often as once in five minutes, and as much oftener as the special circumstances of the case shall require.

6. The speed of vessels in a fog should be moderate.

[Cited in The Hansa, Case No. 6,037.]

7. The burden of proof was upon the schooner to show that the collision was owing to too great speed on the part of the ship; and, this not being shown affirmatively, the schooner alone was liable for the collision.

[In admiralty. Libel by the owners of the schooner Bride against the ship Chancellor for damages for the loss of the schooner by collision.]

J. H. Choate, for libellant.

W. R. Beebe and C. Donohue, for claimant.

BLATCHFORD, District Judge. The schooner Bride, an American fishing vessel, owned by the libellant and one Henry B. Taylor, who was her master, and was on board of her, as such, at the time, was at anchor on the Grand Bank of Newfoundland, on the 22d of September, 1866, in the pursuit of her business as a fishing vessel, in a dense fog, when, at about twenty minutes past four o'clock in the afternoon of that day, she was run down and sunk by the ship Chancellor, then on a voyage from New York to Liverpool. The starboard side of the schooner was struck by the stem of the ship, and, of ten persons composing the company of the schooner, all perished but one. This suit is brought to recover the sum of $8,400 as damages for the loss of the schooner and her outfit, and of the fish and oil on board of her at the time. The interest which belonged to Taylor has become vested in the libellant.

There are several facts in the case which are undisputed. The wind at the time was from south south-west to south-west, blowing a moderate breeze. The ship was heading east by south half south, the wind being, therefore, from half a point to two points and a half abaft the beam of the ship on her starboard side. The fog had been prevailing for four or five days, and was so thick that nothing could be seen more than half the length of the ship ahead. The ship was on her starboard tack, under all her canvas except her studding sails, and going about six knots an hour, and a fog horn was being blown upon her at intervals of about ten seconds, by a lookout man who was stationed on the top gallant forecastle. There were two men at her wheel, the master was standing on the starboard quarter near the wheel, and had been there for about half an hour before the collision, and the officers and crew were all of them on deck. There were four officers and twenty-eight men before the mast. The latitude of the ship, at noon that day, was 45° 30' north, and her longitude at the same time was, by dead reckoning, about 49° west. The schooner had anchored at

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]